# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

STEVE CHUNG-MING WONG,

    Plaintiff,

v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES, et al.,

    Defendants.

Case No. 2:10-CV-00249-KJD-GWF

**ORDER**

    Currently before the Court is Defendant Health and Human Services' ("HHS" or "Federal Defendant") Motion to Dismiss (#5).[1] Plaintiff filed a Response in Opposition (#7), to which HHS filed a Reply (#8). The Federal Defendant seeks that the Court dismiss Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, HHS avers that Plaintiff's claims against it must be dismissed because Plaintiff has failed to allege sufficient factual content to infer that the HHS, as a Federal Defendant, is party to the underlying dispute. Additionally, HHS argues that Plaintiff's claim seeking that the Court declare provisions of the Health Care Quality Improvement Act ("HCQIA"), unconstitutional, should also be dismissed because there has been "no action by the Federal Defendant to deprive Plaintiff of a fundamental right." (#5 at 2.)

**I. Background**

    This case was filed by Plaintiff, Steve Chung-Ming Wong, a board certified anesthesiologist, who had clinical privileges at Mountain View Hospital in Las Vegas, Nevada. On May 31, 2008, Dr. Wong was the anaesthesiologist for a case involving the death a 23 year-old, male patient at

---

[1] The Motion is actually brought by the United States of America, on behalf of the Secretary of the United States Department of Health and Human Services.

Mountain View Hospital.  Following a medical procedure at MountainView, Plaintiff was in the process of awakening the patient when the patient suffered a cardiac arrest and subsequently passed away on June 10, 2008.

On September 3, 2008, the Medical Executive Committee ("MEC") of Mountain View's staff met and discussed the case.  At this meeting, the MEC found that Plaintiff had provided the patient with medical care and treatment "below the applicable standard" and that "corrective action was warranted." (Am. Compl. ¶¶ 40.)  The MEC recommended that Plaintiff's clinical privileges be revoked and communicated this to Plaintiff by letter dated September 8, 2009.  The letter informed Plaintiff that he had the "right to a hearing under Article 7 of the Bylaws" of the Mountain View medical staff.  (Id. at ¶ 43.)  Plaintiff requested a hearing.  A Fair Hearing Committee was selected by the medical staff and on January 27, 2009, the hearing took place.  Plaintiff alleges that the hearing was insufficient and did not afford him adequate due process.  Specifically, Plaintiff states that the hearing was inadequate because (1) documents were presented by the hospital which were not made available to him prior to the hearing; (2) no medical records, expert reports, incident reports, or other records were formally entered into evidence; (3) he was not allowed to confront, cross-examine, or impeach any of the experts or authors of any of the incident reports used by the MEC in his case; and (4) he was not allowed to present scientific evidence to justify his actions. (Am. Compl. ¶¶ 68–73.)

In a letter dated February 6, 2009, Plaintiff was informed that the MEC affirmed its recommendation to revoke Plaintiff's medical privileges.  The February 6, 2009, letter also informed Plaintiff of his right to receive an appellate review of the MEC's decision.  Through counsel, Plaintiff requested the review.  Plaintiff was granted an extension of time for said review, and subsequently, the review took place on August 17, 2009.  The MEC's recommendation was ultimately affirmed, and Plaintiff's privileges were revoked.

Plaintiff filed his Amended Complaint ("Complaint") in state court on September 3, 2010, alleging seventeen causes of action against various Defendants, including two claims against the

Secretary of the HHS. The HHS removed the case to federal court, and, through its instant Motion, seeks that the Court dismiss the two claims made against it. Defendant's instant Motion is brought pursuant to Fed. R. Civ. P. 12(b)(1), and 12(b)(6), for lack of federal subject matter jurisdiction, and failure to state a claim upon which relief may be granted. For the reasons stated herein, the Court grants Defendant HHS's Motion to Dismiss.

**II. Legal Standards**

   **A. 12(b)(1)**

A jurisdictional attack pursuant to Fed. R. Civ. P. 12(b)(1) can be made in one of two ways. The motion can make a facial challenge, which asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction, or it can make a factual challenge, which disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035 (9th Cir. 2004). The Federal Defendant here, alleges a facial challenge, averring that there is no subject matter jurisdiction under the Declaratory Judgment Act.

When, as here, a 12(b)(1) motion raises a facial challenge, the pleadings are taken as true for the purposes of the motion. Frasure v. U.S., 256 F. Supp. 2d 1180 (D. Nev. 2003); citing Jetform Corp. v. Unisys Corp., 11 F.Supp. 2d 788, 789 (D. Va.1998) (holding that if the challenge is that the complaint fails to state sufficient facts to support subject matter jurisdiction the analysis is similar to a 12(b)(6) motion, whereby the facts in the complaint are assumed to be true).

   **B. 12(b)(6) Motion**

Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Papasan

v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." Twombly, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal citation omitted).

In Iqbal, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the Court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. Id. at 1949. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. Id. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." Id. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed. Twombly, 550 U.S. at 570.

**III. Analysis**

As stated above, the United States, on behalf of the Secretary of HHS, requests that the Court dismiss Plaintiff's first and seventeenth claims seeking declaratory relief.

    **1. HCQIA**

Congress enacted the HCQIA in 1986 to prevent malpractice litigation, to improve the quality of healthcare, and to ensure that incompetent physicians would be prevented from "mov[ing] from State to State without disclosure or discovery of the physician's previous damaging or incompetent

4

performance." 42 U.S.C. § 11101(1)-(2).[2] The HCQIA seeks to promote these goals through professional peer review, which is accomplished <u>inter alia</u> by limiting the civil liability of physicians, administrators, and health care entities who are involved in professional review actions. <u>Id.</u> § 11101(3)-(5).

Specifically, the HCQIA provides that, if certain procedural standards are met, participants in a peer review process that results in a professional review action "shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action." <u>Id.</u> § 11111(a)(1). In order for immunity to attach under the HCQIA, the professional review action must be taken.

Congress believed that effective peer review, including mandatory reporting to a nationwide database, could alleviate the national problem of "[t]he increasing occurrence of medical malpractice". <u>Id.</u> at § 11101; <u>see also</u> <u>Freilich v. Upper Chesapeake Health, Inc.</u>, 313 F.3d 205, 211–12 (4th Cir. 2002) (discussing the purpose of HCQIA). Thus, under the HCQIA, each health care entity which "takes a professional review action that adversely affects the clinical privileges of a physician for a period longer than 30 days . . . shall report to the Board of Medical Examiners, in accordance with section 11134(a) of this title. . . ." 42 U.S.C. § 11133 (a)(1). Further, 45 C.F.R. §§ 60.5 and 60.9 require health care entities and the Board of Medical Examiners to report adverse

---

[2] In the Act itself, Congress explained the purposes behind the Act, as:

(1) The increasing occurrence of medical malpractice and the need to improve the quality of medical care have become nationwide problems that warrant greater efforts than those that can be undertaken by any individual State.

(2) There is a national need to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance.

(3) This nationwide problem can be remedied through effective professional peer review.

(4) The threat of private money damage liability under Federal laws, including treble damage liability under Federal antitrust law, unreasonably discourages physicians from participating in effective professional peer review.

(5) There is an overriding national need to provide incentive and protection for physicians engaging in effective professional peer review.

actions regarding clinical privileges to the NPDB.  Hospitals and insurance companies are required to query the National Practitioner Database (" NPDB") on a regular basis.  Specifically, hospitals and insurance companies must make a query at the time a physician applies for a medical staff position or for clinical privileges at the hospital and every two years concerning any physician who is on the medical staff.  45 C.F.R. § 60.10 (a).  Each hospital may rely on the information provided by the Data Bank to the hospital.  45 C.F.R. § 60.10 (b).  Persons and entities are responsible for the accuracy of information which they report to the NPDB. 45 C.F.R. § 60.6 (a).  Once part of the NPDB, the information is available to a wide variety of individuals.  45 C.F.R. § 60.11 (a).

### A. First Claim for Relief

Plaintiff's first claim seeks that the Court grant declaratory and injunctive relief against all Defendants, alleging that Plaintiff's clinical privileges at Mountain View Hospital were improperly revoked.  The Federal Defendant argues that the first claim for relief should be dismissed against the HHS, pursuant to both Rules 12(b)(1) and (b)(6) because there is no subject matter jurisdiction under the Declaratory Judgment Act, and HHS was not a party to Plaintiff's revocation proceedings.

It is undisputed that Plaintiff's privileges were revoked by Mountain View Hospital through an internal process, and in accordance with the administrative and procedural bylaws established within the hospital.  Moreover, Plaintiff has failed to demonstrate any evidence from which the Court may reasonably infer that HHS was a party to his revocation proceedings or decision.  Rather, the decision to revoke Plaintiff's privileges to practice medicine at Mountain View were made by private actors.  Accordingly, the Court finds that Plaintiff's first claim against HHS for declaratory relief fails.

Plaintiff seeks, should the Court grant dismissal of his first cause of action against Federal Defendants, that he be allowed the opportunity to amend his Complaint to bring a defamation claim against HHS.  Specifically, Plaintiff avers that because the HHS "hosts, operates, and facilitates the NPDB, each time a query is made to the NPDB, the query constitutes an actionable "publication." (See #7 at 5.)

Due to the federal government's sovereign immunity, to properly bring a tort action against the United States, the claim must be filed under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, which is a limited waiver of the government's sovereign immunity. <u>United States v. Orleans</u>, 425 U.S. 807, 813 (1976). The provisions of the FTCA however, do not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." <u>See</u> 28 U.S.C. § 2680(h) (emphasis added). As such, the FTCA's limited waiver of sovereign immunity specifically excludes defamation actions. <u>See</u> 28 U.S.C. § 2680; <u>see also</u>, <u>Talbert v. United States</u>, 932 F.2d 1064, 1067 (4th Cir. 1991). <u>Talbert</u>, 932 F.2d at 1067. Accordingly, any suit the Plaintiff may try to bring for defamation against the HHS is specifically excluded from the United States' limited waiver of sovereign immunity. Thus, any attempt Plaintiff makes to assert a defamation action against the Federal Defendant would be futile. Accordingly Plaintiff's first claim for relief fails against the Federal Defendant. <u>See</u> <u>Jackson v. Bank of Hawaii</u>, 902 F.2d 1385, 1387 (9th Cir.1990)

**B. Seventeenth Claim for Relief**

Plaintiff's Seventeenth claim for relief is a facial challenge to the constitutionality of 42 U.S.C. §11133. Therefore, Plaintiff must demonstrate that there is no set of circumstances under which Section 11133 would be valid. "A facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act will be valid." <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987).

**1. State Action**

Principles of due process apply only when there is a "state action" to deprive an individual of a constitutionally protected property interest. It is well established that a "state action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party charged with the deprivation must be a person who may fairly be said to be a state

actor.'" American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999)(citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).  The state action requirement "preserves an area of individual freedom by limiting the reach of federal law and federal judicial power" and "avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." Lugar v. Edmondson Oil Co., 457 U.S. at 936.

Moreover, in order for an action to be classified as a "state action", the Supreme Court requires a close nexus between the private action and the government.  Blum v. Yaretsky, 457 U.S. 991, 1044 (1982).  In Blum v. Yaretsky, the Supreme Court identified three factors for determining whether state action exists: (1) whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself;" (2) whether the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State;" (3) whether "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'" Id. at 1004–5 (citations omitted).

Here, Plaintiff alleges that Mountain View's revocation of his privilege to practice may be viewed as a state action, thus creating the requisite nexus to attach the protections of due process. The Court does not agree.  When a private actor, such as a hospital, revokes a physician's privileges through its internal processes, it is not considered to be a state action.  See Pinhas v. Summit Health, Ltd., 894 F.2d 1024, 1034 (9th Cir. 1989).  There is no close nexus between the HHS and Mountain View Hospital's decision to revoke Plaintiff's privilege to practice medicine.  Additionally, there is nothing in the record to suggest that HHS coerced or encouraged Mountain View to revoke Plaintiff's privileges.  Moreover, the "mere fact that a business is subject to state regulation" is not enough for an action by the business to be a state action.  Id. at 1004.

As stated above, the HQICA does not constitute a state action depriving, or coercing the deprivation of any fundamental or protected property interest.  Rather, the HCQIA describes the procedures that must be followed for a professional peer review board to obtain immunity from civil

damages. See 42 U.S.C. § 11111. The statute requires the reporting of information regarding physicians whose privileges have been revoked for a specified number of days, to a national database.

Moreover, here, Plaintiff alleges that section 11133 "does not ensure that a hospital provide adequate due process" before making a report to the NPDB. (Am. Compl. § 341.) This claim however, is insufficient to effectively challenge the constitutionality of section 11133. Plaintiff has not alleged any link between Mountain View and the HHS other than to aver that the hospital is required to report the revocation of Plaintiff's privileges to the NPDB. This allegation is insufficient to establish state action in revoking Plaintiff's privileges, and Plaintiff's due process claim fails.[3]

**VI. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant Health and Human Services' Motion to Dismiss (#5) is **GRANTED**.

DATED this 25th day of February 2011.

_____
Kent J. Dawson
United States District Judge

---

[3] Moreover, the Court finds that Plaintiff's seventeenth claim for relief also fails because Plaintiff cannot demonstrate that the HCQIA burdens any fundamental right. Because the HCQIA does not burden any fundamental right, or draw distinctions based on any suspect criteria, it is subject to rational basis review, and "the legitimacy of Congress' purpose in enacting the HCQIA is beyond question." Frelich v. Upper Chesapeake Health Inc., 313 F.3d 205, 211 (4th Cir. 2002).